CK:RB
2008R001958

**M10- 726**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

MICHAEL LEVITIS,

        Defendant.

- - - - - - - - - - - - - - - - -X

COMPLAINT & AFFIDAVIT IN
SUPPORT OF ARREST WARRANT

(T. 18, U.S.C., § 1001(a)(2))

EASTERN DISTRICT OF NEW YORK, SS:

    KENNETH HOSEY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    Upon information and belief, on or about January 6, 2010, within the Eastern District of New York, the defendant MICHAEL LEVITIS did knowingly and willfully make materially false, fictitious and fraudulent statements and representations, in a matter within the jurisdiction of the executive branch of the Government of the United States.

    (Title 18, United States Code, Section 1001(a)(2))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with the FBI since 1995, and have been assigned to Squad C-14, which investigates Public Corruption, since 1996.

2. In 2008, Squad C-14 began investigating allegations that a public official ("Public Official") and a member of his staff ("Staff Member") were performing official acts in exchange for campaign contributions. During the course of that investigation, I conducted or participated in physical surveillance, deployed confidential informants, debriefed cooperating witnesses, conducted interviews, and analyzed telephone records and recorded conversations. The information set forth below is based on my knowledge of the investigation, including my review of recorded telephone conversations and meetings, cooperating witness debriefings, and interviews.

3. On April 14, 2009, a confidential informant (CI) acting at my direction recorded a conversation with the defendant MICHAEL LEVITIS at a location in the Eastern District of New York. Prior to the conversation, among other things, I instructed the CI to ask LEVITIS to arrange a meeting between the CI and the Staff Member. During the conversation, the CI told

---

[1]  Because the purpose of this affidavit is merely to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

3

LEVITIS that he was in need of assistance from the Staff Member regarding an upcoming inspection at the CI's business. Excerpts of the conversation follow:[2/]

> LEVITIS: I'll call him [Staff Member], and we'll all have a... *meeting* with him.
>
> CI: A *meeting*, right? Uh, alright. Alright. Thanks a lot.
>
> LEVITIS: *No problem.*
>
> CI: He knows these (UI). He solves these kinds of problems. Yes, very well. Well, then. What... then next week...
>
> LEVITIS: But then, you'll have to do a *fundraiser* for him. At your place.
>
> CI: Uh...(UI)
>
> LEVITIS: (UI)...you'll have to... get these arabs together (UI).
>
> CI: Oh, okay [chuckling]. Money, right?
>
> UM:[3/] Yes, just checks... to gather your friends who own businesses... so that they write out checks to him... That's all. *Fundraising*.

---

[2/] All conversations quoted herein are in draft form. The conversations were translated from Russian by a professional translator working for the FBI. Words that were spoken in English appear in italics.

[3/] I have reviewed the recording of this conversation with the individual identified as UM above, who confirmed that he took part in it, and that he, LEVITIS and the CI discussed fundraising for the Public Official.

| | |
|---|---|
| CI: | Yes. |
| LEVITIS: | *Fundraising.* You remember how... You were there when he [business owner-1] did it for [Public Official], right? |
| CI: | Yes, yes, yes, yes... (UI) Yes. Yes. (UI) |
| LEVITIS: | (UI) Yes. Yes. That's how it was (UI). |
| CI: | The same. There's gonna be big sums probably... |
| LEVITIS: | Huh? |
| CI: | [Business owner-1] probably gives big sums...Twenty thousand or... something. |
| LEVITIS: | I think it can be done for less... new...(UI) |
| CI: | (UI) Less... (UI) |
| LEVITIS: | (UI) If less... I mean, I'll talk to him [Staff Member]. First, let him... let... let him take care of it first. |
| CI: | Yes. I know he helped [business owner-2] a lot also. |
| LEVITIS: | He helped a lot. |
| CI: | A lot, right... |
| LEVITIS: | To start off, you'll have to throw in a few thousand. To start off. |
| CI: | Uh, to start off... |
| LEVITIS: | And then, if he solves your problem... |

5

CI:       Yes...

LEVITIS:  Depends on whether the problem is big or small... How much work he has put in...

CI:       Alright.

4. On April 22, 2009, acting at my direction, the CI recorded another conversation with the defendant MICHAEL LEVITIS at a location in the Eastern District of New York. Prior to the conversation, among other things, I again instructed the CI to ask LEVITIS to arrange a meeting for the CI with the Staff Member. I also instructed the CI to determine if the Staff Member would accept a cash payment on behalf of the Public Official. During the meeting, LEVITIS and the CI agreed that the CI would provide $3,000 cash to LEVITIS at a later date. LEVITIS stated that he would give $2,000 of that money to the Staff Member and keep the remaining $1,000 for himself.

5. On April 27, 2009, acting at my direction, the CI recorded a conversation with the defendant MICHAEL LEVITIS at a location in the Eastern District of New York. Prior to the conversation, the CI was provided with $3,000 cash by the FBI. Among other things, I instructed the CI to pay the $3,000 to LEVITIS. Excerpts of the conversation follow:

CI:       It's good. Then it will be like a, what is it called - a *fundraiser*. [LEVITIS laughing] You don't want to?

| | |
|---|---|
| LEVITIS: | So far, you don't need a *fundraiser*. God forbid, if you are going to have problems... |
| CI: | Yes. |
| LEVITIS: | ...then you'll have to do it. You don't need it for now... |

******

| | |
|---|---|
| CI: | Okay. So, it's like we agreed? 1000 for you and 2000 for him? |

The CI then provided $3,000 cash to LEVITIS. The transaction was captured on video.

6. On September 18, 2009, acting at my direction, the CI recorded a conversation with the defendant MICHAEL LEVITIS at a location in the Eastern District of New York. Prior to the conversation, among other things, I instructed the CI to discuss what actions the Staff Member had taken to assist the CI in connection with a hearing the CI was scheduled to have with a New York State agency. Excerpts of the conversation follow:

| | |
|---|---|
| CI: | Good. How are things with you? |
| LEVITIS: | Good. So, I just talked with [Staff Member]. He said that he called there. They moved the *hearing* back two weeks. |
| CI: | Yeah? |
| LEVITIS: | So for now you can still work. |

******

| | |
|---|---|
| CI: | And what with [Staff Member]... what will we... when... he'll |

7

|          |                                                                                                       |
|----------|-------------------------------------------------------------------------------------------------------|
|          | solve the problem there, right? My *lawyer'll* call him, call him and solve the problem. And then we'll see what's what. |
| LEVITIS: | He asked that you do a *fundraiser*. I said, "Help first." |
| CI:      | Yeah. I'll do it. Yes I'll do a *fundraiser* for him. |
| LEVITIS: | Then we'll do it. |
| CI:      | Yes. |
| LEVITIS: | I said, "First, *let's see what you can do.*" |
| CI:      | Yeah, yeah, I can. Because October... business is starting now... |
| LEVITIS: | First let... all the problems be resolved... |
| CI:      | Yeah and we'll do... |
| LEVITIS: | But he wants you to do a *fundraiser* at [LEVITIS'S business]. But he wants you to do it. |
| CI:      | *Fundraiser* at [LEVITIS's business]? |
| LEVITIS: | I, I don't care. If you want, do it at your place. *I don't care.* First, let everything get resolved and then... then we'll decide where. |
| CI:      | Okay, good. |

7.  On January 6, 2010, the defendant MICHAEL LEVITIS was interviewed by the FBI at his residence in the Eastern

8

District of New York. During the interview, LEVITIS was asked if he and the CI ever discussed holding a fundraiser. LEVITIS stated that he did not discuss having a fundraiser with the CI.

8. When asked if he had any financial dealings with the CI, the defendant MICHAEL LEVITIS, who is a practicing attorney, stated that he may have received a few hundred dollars from the CI for an hour of legal advice regarding a lawsuit. LEVITIS did not recall if the CI paid by check or paid cash but indicated that he likely paid by check because LEVITIS said that he rarely takes cash.

9. The defendant MICHAEL LEVITIS was then advised that he had provided false statements during the interview for which he could be charged with a federal felony for lying to the FBI. He did not change or amend his statement.

WHEREFORE, your deponent respectfully requests that a warrant issue for the defendant MICHAEL LEVITIS so that he may be dealt with according to law.

*[signature]*
KENNETH HOSEY
Special Agent
Federal Bureau of Investigation

Sworn to before me this
23rd day of June, 2010

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK